UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| **MITCHELL HAYWARD BAILEY,** § | |
|     **Plaintiff** § | |
| § | |
| vs. § | **CIVIL ACTION NO. C-06-168** |
| § | |
| **UNITED STATES OF AMERICA,** § | |
|     **Defendant** § | |
| § | |

## MEMORANDUM AND RECOMMENDATION

Plaintiff is in the custody of the federal Bureau of Prisons ("BOP") and currently is incarcerated at the Federal Prison Camp in Millington, Tennessee. On January 29, 2000 plaintiff was arrested at the Falfurrias Border Patrol checkpoint. Law enforcement officers seized property and cash from plaintiff at the time of his arrest. On June 1, 2000 plaintiff was convicted in the United States District Court for the Southern District of Texas, Corpus Christi Division, of drug possession and distribution offenses. United States v. Bailey, No. 00-CR-24-1 (S.D. Tex., June 1, 2000). Plaintiff filed an unsuccessful appeal and has filed a number of post-conviction motions, including requests for relief under 28 U.S.C. § 2255. See generally Bailey, No. 00-CR24-1, D.E. 69-113).

On April 6, 2006 the Clerk received a document from plaintiff requesting return of property seized from him at the time of his arrest (D.E. 1). The request for return of property was characterized as a Rule 41(g) motion under the Federal Rules of Criminal Procedure and accordingly, was characterized as a civil action, invoking the Court's equity jurisdiction under 28 U.S.C. § 1331. Plaintiff was ordered to comply with the requirements of the Prison Litigation

Reform Act ("PLRA") and did so (D.E. 2, 4, 5). Plaintiff's motion was severed from his criminal case and assigned a civil case file number.

## BACKGROUND

According to petitioner's original motion, on January 29, 2000 he was driving a 1995 Freightliner tractor and trailer when he was detained at the Falfurrias, Texas checkpoint after a dog alerted to the trailer and agents noticed discrepancies in the bill of lading. Plaintiff consented to a search and agents found marijuana inside the trailer. Plaintiff was arrested and was found to have $2,000 on his person and an additional $9,054 in several bank bags (D.E. 1, p. 1). All of the money and other personal property were confiscated that day.

Petitioner argues that he is entitled to the return of his property. In addition to the $11,054 in United States Currency, he seeks return of the following items:

    (1) Radar detector C Passport III
    (2) Nike black nylon athletic bag
    (3) Black leather bomber jacket
    (4) One pair size 10 Tony Lama black boots
    (5) One 10 gram gold leave bracelet
    (6) One Rolex white gold submariner watch
    (7) Three gold and diamond rings
    (8) One pair Oakley frogskin sun glasses

(D.E. 1).

Defendant filed a motion to dismiss on July 14, 2006 and in response to a court order, filed a supplemental motion to dismiss on October 18, 2006 (D.E. 13, 15) to which plaintiff responded on November 6, 2006 (D.E. 16). In its motion to dismiss, defendant argues that (1) plaintiff is time-barred from seeking return of the property; (2) Plaintiff is barred by the doctrine of laches from seeking return of the property; (3) the currency was lawfully forfeited; and (4)

The property sought by plaintiff either has been returned, disposed of in accordance with law or was never seized.

Because the motion to dismiss discusses matters and documents outside the pleadings, it is construed as a motion for summary judgment.  FED. R. CIV. P. 12(b).  Both parties have had ample opportunity to present all material made pertinent to such a motion by FED. R. CIV. P. 56.

## APPLICABLE LAW

### A.  Civil Forfeiture of Currency

#### 1.  Statute of Limitations

The six-year statute of limitations set out in 28 U.S.C. § 2401(a)[1] applies to civil forfeiture cases.  United States v. Wright, 361 F.3d 288, 290 (5th Cir. 2004)(citing Clymore v. United States, 217 F.3d 370, 373 (5th Cir. 2000)).  The cause of action accrues on the date on which the claimant was on reasonable inquiry notice about the forfeiture, described as the earlier of when the claimant has become aware that the government had declared the property forfeited, or when an inquiry that he could reasonably have been expected to make would have made him aware of the forfeiture.  Wright, 361 F.3d at 290.

If plaintiff wanted to contest the forfeiture proceedings, he had six years from the date he received the notice, which according to the return receipt, was March 10, 2000 (D.E. 15, Ex. D).  The statute of limitations ran on March 10, 2006.  On plaintiff's original motion for return of property, he wrote the date "March 10, 2006" by his signature and also by the certificate of service on the last page of the document.  However, the envelope in which plaintiff mailed the

---

[1] "[E]very civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right o action first accrues."

motion was postmarked April 3, 2006, more than three weeks after the March 10, 2006 date plaintiff wrote on his motion.

"Under the 'mailbox rule,' a prisoner's federal habeas corpus petition is deemed filed when he delivers the petition to prison officials for mailing to the district court." Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999)(citing Spotville v. Cain, 149 F.3d 374, 376-78 (5th Cir. 1998). When promulgated, the mailbox rule applied to the 30-day deadline for filing a notice of appeal submitted by a *pro se* prisoner but has since been extended to filing deadlines for various documents by *pro se* litigants under specific federal rules and statutes. Coleman, Id. For example, in Cooper v. Brookshire, 70 F.3d 377, 379-380 (5th Cir. 1995) the Court held that the mailbox rule applies to the filing of a civil complaint under FED.R.CIV.P. 5(e). In Thompson v. Raspberry, 993 F.2d 513, 515 (5th Cir. 1993) the rule was extended to the filing of written objections to a magistrate judge's recommendation under FED.R.CIV.P. 72(b) and in Spotville, 149 F.3d at 378, the Court held that for purposes of determining whether the Antiterrorism and Effective Death Penalty Act of 1996 applies, a habeas petition is deemed filed when it is delivered to prison authorities for mailing. Although no case was found on point, it will be assumed for purposes of petitioner's motion that the mailbox rule applies to his case and that his motion for return of property was deemed filed on the date he gave it to prison authorities for mailing.

However, that assumption does not answer the question of when plaintiff gave his motion to prison authorities for mailing. In response to an order to produce a mail log from the Millington Unit where plaintiff is housed, the defendant responded that the prison mail room does not keep a log of regular mail but included an affidavit from a prison official familiar with

the mail collection and delivery procedures at FPC Milligan. The official stated that inmates send non-accountable legal mail (as distinguished from certified, registered or insured items) by hand delivering it to the Inmate Systems Officer in the mail room either at 7:30 a.m. or between the hours of 3:00 p.m. and 4:00 p.m. each business day. All legal mail is delivered by the prison staff to the Millington, Tennessee post office at approximately 8:30 a.m. each day (Decl. of Chris Paul, D.E. 18-2, pp. 1-2). Inmates may place non-accountable general correspondence in the inmate mailbox located in front of the Health Services Department at any time and it is picked up by the Inmate Systems Officer at approximately 8:00 a.m. each day and delivered to the post office that same workday (Id. at 2-3).

If plaintiff's mail was handled in the normal course of business, the April 3, 2006 postmark indicates that he placed it in the prison mail system no earlier than March 31, 2006.[2] However, plaintiff stated under penalty of perjury that he placed the motion in the prison mail system on March 10, 2006 (D.E. 19). Accordingly, there is a fact issue on the question of whether plaintiff timely filed his motion and defendant is not entitled to judgment as a matter of law on this issue.

**2. Laches**

Defendant argues in the alternative that plaintiff's cause of action is barred by the doctrine of laches. To establish that a cause of action is barred by laches the defendant must show the occurrence of (1) a delay (2) that was not excusable (3) which caused the government undue prejudice. Clymore, 217 F.3d at 376. Defendant argues that the delay in plaintiff's case

---

[2]April 3, 2006 was a Monday. Assuming mail is not taken to the post office during the weekend, plaintiff must have placed his motion in the prison mail system the previous Friday.

was inexcusable, but describes no prejudice caused by the delay. Without such an allegation and proof in support thereof, defendant's motion to dismiss should not be granted based on the doctrine of laches.

### 3. Due Process Rights

According to the government, the currency seized from plaintiff was lawfully forfeited. At the time the currency in plaintiff's possession was forfeited, the following forfeiture statute was in effect:

> The following shall be subject to forfeiture to the United States and no property right shall exist in them: . . .
>
> (6) All moneys, negotiable instruments, securities or other things of value furnished or intended to be furnished by any person for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter, except that no property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

21 U.S.C.A. § 881 (a)(6)(West 1996).

Statutes relating to seizure and forfeiture of property for violation of customs laws apply to seizure and forfeiture of property for violation of drug laws. 21 U.S.C. § 881(d). The customs laws provide that after an asset has been seized, the appropriate officer shall provide notice by publication for at least three successive weeks in such a manner as the Secretary of the Treasury may direct and also shall send written notice of the seizure together with information regarding applicable procedures to each party who appears to have an interest in the seized article. 19 U.S.C.A. § 1607(a).

Once an administrative forfeiture proceeding is complete, a claimant may challenge the forfeiture in district court, although the review is limited. District courts lack jurisdiction to review the merits of such a forfeiture, but may hear challenges of failure to comply with procedural requirements or to comport with due process. United States v. Schinnell, 80 F.3d 1064, 1069 (5th Cir. 1996)(citing United States v. Arreola-Ramos, 60 F.3d 188, 191 n. 13-14 (5th Cir. 1995)).

The Due Process Clause of the Fifth Amendment prohibits the United States from depriving any person of property without due process of law. "From those cryptic and abstract words . . . we have determined that individuals whose property interests are at stake are entitled to notice and an opportunity to be heard." Dusenbery v. United States, 534 U.S. 161, 167, 122 S.Ct. 694, 699, 151 L.Ed.2d 597 (2002)(citing Mullane v. Central Hanover Bank & Trust Co., 339 U.S. at 313, 70 S.Ct. at 652, 94 L.Ed.2d 865 (1950) and United States v. James Daniel Good Real Property, 510 U.S. 43, 48, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993)).

Defendant asserts that notice of administrative forfeiture of $7,760.00 was sent to plaintiff at both the Nueces County jail facility where he was being held and also to his last known mailing address in Spartanburg, South Carolina (D.E. 13, p. 2, D.E. 15, Ex. D). Defendant's records show that the notice was received at the Nueces County jail on March 10, 2000 and arrived at the South Carolina address on March 11, 2000 (D.E. 15, Ex. D). Plaintiff had until April 2, 2000 to file a claim to recover the money (D.E. 15, Ex. D). He did not do so.

Plaintiff has never claimed that he did not receive notice of the forfeiture. In his original motion, he did not allude to the administrative forfeiture proceeding at all and did not describe any violation of his constitutional rights. In his response to the motion to dismiss, plaintiff

asserts that defendant has failed to produce original documentation showing that he received notice of the forfeiture, but only produced a copy of a status inquiry on the seizure (Resp. to Supp. Mo. to Dism., D.E. 16, referring to Kennemer Aff., D.E. 15, Ex. D).

The Constitution does not require that the government prove actual receipt of the notice of forfeiture. Rather, the government must show that notice was "'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" Dusenbery, 534 U.S. at 168, 122 S.Ct. at 700 (quoting Mullane, 339 U.S. at 314, 319, 70 S.Ct. at 652). In this case the government provided a copy of a forfeiture status inquiry showing that notice was sent to plaintiff at the jail where he was incarcerated and also to his home address. In addition, the document shows that notice was published in the Wall Street Journal at least one time (D.E. 15-2, Ex. D). Plaintiff has not provided evidence or a sworn statement alleging that the government did not send the notice. In fact, he has not even alleged that the government did not send the notice or that he did not receive it. Absent such allegations and evidence to support them, plaintiff cannot prevail on his claim that he is entitled to return of the currency.

### 4. Amount of Money at Issue

Defendant was ordered to explain a discrepancy between the $7,760.00 in United States currency that was forfeited and the $11,054.00 claimed by plaintiff to have been seized and identified in the government's own pleadings as having been recovered at the time of plaintiff's arrest (D.E. 14). Defendant submitted an affidavit from Jeff Kennemer, a special agent employed by the Drug Enforcement Agency ("DEA"). Kennemer was present on the day

plaintiff was arrested and he filed the criminal complaint in plaintiff's case on January 30, 2000.

Kennemer stated the following:

> In the Criminal Complaint dated January 30, 2000, and filed by affiant, the Complaint Narrative states that "[s]everal bags with cash were also found in the cab, totaling approximately $4,500.00." That approximate amount is the same amount of currency which was later determined to be $4,554.00. The additional cash found on Bailey's person at the Checkpoint and the $4,554.00 found in the cab totaled the $7,760.00 in United States currency which was seized at the time of Bailey's arrest and later administratively forfeited to the United States.

(Aff. of Jeff Kennemer, D.E. 15-2, pp. 2-3). Kennemer appears to be arguing that the initial $4,500.00 was counted twice, but subtracting $4,500.00 from $11,054.00 is $6,554.00, not $7,760.00, so his explanation is not clear.

Plaintiff responds that court documents have consistently reflected that the sum of $11,054.00 was seized from him and that this is the first time defendant has asserted that a mistake was made in the original counting of the currency. A review of plaintiff' underlying criminal case fails to clarify the matter.

In the Presentence Investigation Report prepared in plaintiff's case the following is stated:

> Several bags of cash totaling approximately $4,500 were also found in the cab. Bailey was also found to be carrying $2,000 on his person. Agents also found in the sleeper compartment of the vehicle, several bags with large amounts of money totaling $4,554.00, 3 cellular phones and 2 pagers.

(PSR, p. 4).

The PSR is consistent with plaintiff's claim that he had $11,544.00 when he was arrested.

A copy of the transcript in plaintiff's original case was obtained. At plaintiff's sentencing hearing, Agent Kennemer testified that a total of $7,600 was seized from plaintiff (Sentencing Hearing in United States v. Bailey, No. 00CR-00024-1, Tr. 11, located at D.E. 113).

9

Also at the sentencing hearing, in a discussion about the leadership of the drug transaction, the following conversation took place:

> Q (prosecutor): How much money did you have on you when you got to the checkpoint?
>
> A (Bailey): We had, I had $4,000, is what I had and Rico give me $2,000, left it at the motel, which made six, and I had took seven or eight with us and we paid for the load with the rest of it, with the difference.

(Tr. 39). At another point, plaintiff said he paid $6,000 for the load of cabbage in which the marijuana was hidden (Tr. 40). Although the testimony is imprecise, if during the course of the drug transaction plaintiff had $13,000 or $14,000 in his possession and paid $6,000 for the load of cabbage, he would have been left with $7,000 or $8,000 at the time of his arrest. Such an amount is consistent with the seizure of $7,760.00.

The evidence submitted does not give a definitive answer to the question of how much money plaintiff had in his possession at the time he was arrested. However, in regard to the forfeiture question, the only aspect of the forfeiture that plaintiff can challenge in this proceeding is whether he received due process in the issuance of notice of the forfeiture. Any claim he might have for conversion or other wrongful taking of currency other than that which was forfeited would have to be brought in another lawsuit and he would have to exhaust his administrative remedies and comply with the relevant statutes of limitation.

### B. Disposition of Personal Items

Regarding plaintiff's personal items, Agent Kennemer stated in his affidavit that plaintiff received notice on January 29, 2000 that the Corpus Christi office of the DEA had personal property that belonged to him. Plaintiff was asked to either take control of his property or designate a representative to take control of his property within 30 days. He was told that if he

did not make arrangements to obtain the property, it would be disposed of according government guidelines. Plaintiff signed an acknowledgment that he received the information (Kennemer Aff., D.E. 15, p. 3 and Ex. A).

Kennemer further explained that when he was interviewing plaintiff after his arrest, plaintiff identified Greg Taylor as his son-in-law and said he had leased a car which was following plaintiff's tractor-trailer rig when it was stopped. Plaintiff told him that the car was due back at the rental company in a few days and he gave Kennemer a telephone number for Taylor in the hopes that Taylor would be able to retrieve the car and return it to the rental company as soon as possible. Plaintiff also gave Kennemer his daughter's telephone number. Kennemer wrote both telephone numbers down on the back of a document where plaintiff's possessions were listed (Kennemer Aff., D.E. 15, p. 4 and Ex. B). At that same time, plaintiff asked Kennemer to contact his daughter and Taylor to tell them about his arrest and to ask Taylor to travel to Corpus Christi and retrieve the car as well as his personal property (Kennemer Aff., D.E. 15, p. 5).

Kennemer called Taylor who traveled to Corpus Christi and took possession of plaintiff's property on February 1, 2000. Taylor signed for receipt of plaintiff's property (Kennemer Aff., D.E. 15, p. 5 and Ex. C). In his request for return of property, plaintiff gave detailed descriptions of the items he wants to have returned to him. Below is the list of items sought by plaintiff, along with the description of items seized from him and given to Taylor:

| **Sought** | **Seized and given to Taylor** |
|---|---|
| (1) Radar detector C Passport III | Cobra ESD-6200 Radar Detector (D.E. 15, Ex. C, p. 3) |
| (2) Nike black nylon athletic bag | Black toiletry bag (Id., p. 3); Carry bag with misc. clothing, hair dryer (Id., p. 5) |

11

| | |
|---|---|
| (3) Black leather bomber jacket | 3 black leather jackets (Id., p. 6) |
| (4) One pair size 10 Tony Lama black boots | No boots listed |
| (5) One 10 gram gold leave bracelet | 1 gold color bracelet (Id., p. 3). |
| (6) One Rolex white gold submariner watch | 1 Hilton brand wristwatch (Id., p. 1); 1 Seiko brand watch from Joe Frady (Id., p. 5) |
| (7) Three gold and diamond rings | 1 gold color ring with clear stones (Id., p. 5; 4 gold color rings with clear stones (Id., p. 3) |
| (8) One pair Oakley frogskin sun glasses | 1 pair sunglasses (Id., p. 2). |

Although the descriptions vary somewhat from the items claimed by plaintiff, he does not dispute that the items turned over to Taylor were the items confiscated at the time of his arrest. Nor does he argue that he did not receive notice on January 29, 2000 that he needed to designate a representative to take control of his property. However plaintiff does argues that he never gave the government permission to release his personal property to Taylor.

The six-year statute of limitations set out in 28 U.S.C. § 2401(a) applies to actions for wrongful seizure and forfeiture of property by the United States. Polanco v United States Drug Enforcement Administration, 158 F.3d 647, 652 (2nd Cir. 1998). The cause of action accrues on the day the claimant was on reasonable notice about the forfeiture which is the earlier of when he has become aware that the government has declared the property forfeited, or when an inquiry that he could reasonably have been expected to make would have made him aware of the forfeiture. Wright 361 F.3d at 288.

In this case plaintiff received notice on January 29, 2000 that he had 30 days to designate a representative to take control of his property and that if his property were not recovered within 30 days, or by February 28, 2000, that it would be considered abandoned and would be destroyed. Accordingly, plaintiff had until February 28, 2006 to file a cause of action for wrongful taking of his property. Plaintiff declared under penalty of perjury that he placed his

complaint into the prison mail system on March 10, 2006, or ten days after the deadline for filing. For this reason, any claim he is making in regard to his personal property is barred by the statute of limitations and plaintiff's cause of action for recovery of his personal property should be dismissed with prejudice because it is time-barred.

## RECOMMENDATION

For the reasons stated above, it is recommended that defendant's motion to dismiss and the supplemental motion to dismiss (D.E. 13, 15) be granted and plaintiff's causes of action for wrongful seizure and forfeiture be dismissed with prejudice.

Respectfully submitted this 14th day of December, 2006.

_____
B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **TEN (10) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1)(C) and Article IV, General Order No. 80-5, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within TEN (10) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  Douglass v. United Services Auto Ass'n, 79 F.3d 1415 (5th Cir. 1996)(en banc).