UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| **MITCHELL HAYWARD BAILEY,** § | |
|     **Plaintiff,** § | |
| § | |
| **vs.** § | **CIVIL ACTION NO. C-06-168** |
| § | |
| **UNITED STATES OF AMERICA, et al.,** § | |
|     **Defendants.** § | |

## MEMORANDUM AND RECOMMENDATION

Plaintiff is in the custody of the federal Bureau of Prisons ("BOP") and currently is incarcerated at the Oakdale facility in Oakdale, Louisiana. On January 29, 2000 plaintiff was arrested at the Falfurrias Border Patrol checkpoint. Law enforcement officers seized property and cash from plaintiff at the time of his arrest. On June 1, 2000 plaintiff was convicted in the United States District Court for the Southern District of Texas, Corpus Christi Division, of drug possession and distribution offenses. United States v. Bailey, No. 00-CR-24-1 (S.D. Tex., June 1, 2000). Plaintiff filed an unsuccessful appeal and has filed a number of post-conviction motions, including requests for relief under 28 U.S.C. § 2255. See Bailey, No. 00-CR-24-1, D.E. 69-113.

### BACKGROUND

**A. Procedural Background**

On April 6, 2006 the Clerk received a document from plaintiff requesting return of property seized from him at the time of his arrest (D.E. 1). The request for return of property was characterized as a Rule 41(g) motion under the Federal Rules of Criminal

Procedure and then was characterized as a civil action, invoking the Court's equity jurisdiction under 28 U.S.C. § 1331. Plaintiff was ordered to comply with the requirements of the Prison Litigation Reform Act ("PLRA") and did so (D.E. 2, 4, 5). Plaintiff's motion was severed from his criminal case and assigned a civil case file number. In his motion, plaintiff sought return of $11,054 in United States Currency and various items of personal property.

Defendant filed an original and supplemental motion to dismiss in this case (D.E. 13, 15) and plaintiff filed a response to the motions (D.E. 16). A memorandum and recommendation ("M&R") was filed on December 14, 2006 (D.E. 20) in which it was recommended that plaintiff's cause of action be dismissed because he was given adequate notice regarding the forfeiture of the currency and because his personal property had been returned to a relative at plaintiff's direction. It was recognized in the M&R that there was a discrepancy in the amount of money seized. Plaintiff avers that $11,054 was seized and the government claims that only $7,760 was seized. Defendant was asked to explain the discrepancy but the explanation given by an agent of the Drug Enforcement Agency ("DEA") was unclear. It was noted in the M&R that if plaintiff was making a claim of conversion or other wrongful taking of the currency that he would have to bring it in another lawsuit and would have to exhaust his administrative remedies and comply with the relevant statutes of limitation. Plaintiff filed objections to the M&R (D.E. 22), but the District Court adopted the M&R and granted defendant's motion to dismiss on March 7, 2007 and final judgment was entered the same day (D.E. 23, 24).

Plaintiff appealed the dismissal of his case to the Fifth Circuit Court of Appeals which affirmed in part, reversed in part and remanded the case to the District Court. <u>Bailey v. United States of America</u>, 508 F.3d 736 (5th Cir. 2007). The Fifth Circuit found that plaintiff received adequate notice regarding the forfeiture of the $7,760 that the defendant claims it seized and also found that his claim regarding the seizure of his personal property was untimely. <u>Id.</u> at 739, 740. Regarding the discrepancy in the amounts, the Fifth Circuit remanded the case for a determination of whether the government actually possessed the additional currency that plaintiff seeks. The court said that if the government actually seized $11,054, there is no evidence on the record showing that the government does not currently possess the additional currency and the district court must proceed to the merits of plaintiff's claim. The court further found that because there was a fact dispute concerning whether the government has, or ever had the claimed monies in its possession, the district court erred in granting summary judgment as to the currency plaintiff alleges the government seized but did not forfeit.

The Court went on to say that if it is determined on remand that the government did, in fact, seize the additional currency, the government bears the burden of showing what happened to it. If the district court finds that the government no longer possesses the currency, plaintiff's motion must be denied because the government cannot return property it does not possess and the doctrine of sovereign immunity bars the award of monetary damages under Rule 41(g). The district court was further directed to consider allowing plaintiff to amend his pleadings and assert any claim he might have under

Bivens v. Six Unknown Named Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) or other applicable law.

Following remand of the case by the Fifth Circuit, plaintiff filed a motion to amend his complaint to add a Bivens claim and the motion was granted on March 21, 2008 (D.E. 43, 44). The defendants were served and both the United States and DEA Agent Jeff Kennemer filed answers (D.E. 50, 51, 58). Defendants filed a motion to dismiss on July 24, 2008 (D.E. 63).

On September 29, 2008, the parties were sent notice that because they had attached and/or referred to documents outside the pleadings, the motion to dismiss would be construed as a motion for summary judgment (D.E. 64). Both parties were given 20 days to submit additional evidence. Neither party submitted additional evidence.

**B. Factual Background**

According to plaintiff's original motion, on January 29, 2000 he was driving a 1995 Freightliner tractor and trailer when he was detained at the Falfurrias, Texas checkpoint after a dog alerted to the trailer and agents noticed discrepancies in the bill of lading. Plaintiff alleges he consented to a search and agents found marijuana inside the trailer. Plaintiff then states he was arrested and was found to have $2,000 on his person and an additional $9,054 in several bank bags (D.E. 1, p. 1). Plaintiff claims that all of the money and other personal property, including jewelry, clothing and assorted other items were confiscated that day (D.E. 1).

## APPLICABLE LAW

**A. Summary Judgment Standard**

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See FED.R.CIV.P. 56(c). An issue is material if its resolution could affect the outcome of the action. Daniels v. City of Arlington, 246 F.3d 500, 502 (5th Cir.), cert. denied, 122 S. Ct. 347 (2001). The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, drawing all justifiable inferences in favor of the party opposing the motions. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The Court will not weigh the evidence or evaluate the credibility of witnesses. Caboni v. General Motors Corp., 278 F.3d 448, 451 (5th Cir. 2002).

The movant bears the initial burden of showing the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). If the movant demonstrates there is an absence of evidence to support the nonmovant's case, the nonmovant must come forward with specific facts showing that there is a genuine issue for trial. See Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356. To sustain this burden, the nonmovant cannot rest on the mere allegations of the

pleadings.  See Celotex, 477 U.S. at 324, 106 S.Ct. at 2553; Caboni, 278 F.3d at 451; FED.R.CIV.P. 56(e)(2).[1]  After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted.  Caboni, 278 F.3d at 451.

## A.  Discrepancy in Amounts

As discussed in the original M&R, there are discrepancies in the evidence of record setting forth the amount of money seized from plaintiff.  Plaintiff maintains that $11,054 was seized while defendants argue that only $7,760 was seized.  Documents submitted by defendants with their motion for summary judgment filed on July 24, 2008, clarify the issue.

Included as part of defendants' motion for summary judgment were a copy of the investigation report and the complaint narrative produced in plaintiff's case.  In the investigation report, which was prepared on February 4, 2000 and signed by Agent Kennemer on February 18, 2000, it is noted that currency in the amount of $7,760 was seized from plaintiff by Kennemer and that the currency was transferred into a cashiers check and turned over to the United States Marshal's Service for seizure (D.E. 63, Ex. 1D, p. 2).  In the "Details" section of the report it is stated that a Border Patrol Agent

---

[1] When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must–by affidavits or as otherwise provided in this rule–set out specific facts showing a genuine issue for trial.  If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

named Andrews found the currency and turned it over to the "CCRO" for seizure and/or safekeeping (D.E. 63, Ex. 1D, p. 6). The complaint narrative states that agents found several bags of cash totaling approximately $4,500.00 in the cab and that Bailey was in possession of more than $2,000.00 in cash at the time of his arrest (D.E. 63, Ex. 1E).

In addition, the government submitted a sworn statement by Brenda King, a records examiner analyst with the forfeiture support associates assigned to the DEA, along with supporting documentation. The records show that on January 31, 2000, $7,760.00 seized from plaintiff was transferred to the United States Marshal's Service (D.E. 63, Exs. 1 and 1A). King stated that if the DEA had possessed more than $7,760 it would have appeared in the documents and that if the DEA still possessed money seized in plaintiff's case she would be aware of the money but she was not aware of any money.

The first and only time it is recorded that more than $7,760 was seized is in the presentence investigation report ("PSR") prepared on April 28, 2000, where the following is stated:

> Several bags of cash totaling approximately $4,500 were also found in the cab. Bailey was also found to be carrying $2,000 on his person. Agents also found in the sleeper compartment of the vehicle, several bags with large amounts of money totaling $4,554.00, 3 cellular phones and 2 pagers.

(PSR, p. 4, filed at D.E. 66). These three amounts added together total $11,054.

At plaintiff's sentencing hearing, Agent Kennemer testified under oath that a total of $7,600 was seized from plaintiff (Tr. 11, filed at D.E. 68). Also at the sentencing hearing, in a discussion about the leadership of the drug transaction, plaintiff made the

following statements under oath about the amount of cash he possessed at the time of his arrest:

> Q (prosecutor): How much money did you have on you when you got to the checkpoint?
>
> A (Bailey): We had, I had $4,000, is what I had and Rico give me $2,000, left it at the motel, which made six, and I had took seven or eight with us and we paid for the load with the rest of it, with the difference.

(Tr. 39). At another point, plaintiff testified he paid $6,000 for the load of cabbage in which the marijuana was hidden (Tr. 40). Although the testimony is imprecise, if during the course of the drug transaction plaintiff had $13,000 or $14,000 in his possession and paid $6,000 for the load of cabbage, he would have been left with $7,000 or $8,000 at the time of his arrest. Such an amount is consistent with the seizure of $7,760.00.

Agent Kennemer submitted an affidavit as part of the government's earlier motion to dismiss in which he stated the following:

> In the Criminal Complaint dated January 30, 2000, and filed by affiant, the Complaint Narrative states that "[s]everal bags with cash were also found in the cab, totaling approximately $4,500.00." That approximate amount is the same amount of currency which was later determined to be $4,554.00. The additional cash found on Bailey's person at the Checkpoint and the $4,554.00 found in the cab totaled the $7,760.00 in United States currency which was seized at the time of Bailey's arrest and later administratively forfeited to the United States.

(Aff. of Jeff Kennemer, D.E. 15-2, pp. 2-3).

The only time it is represented that $11,054 was seized from the plaintiff is in the PSR, which was prepared three months after plaintiff was arrested and which was based on the complaint narrative and the investigative report, neither of which support a

conclusion that $11,054 was actually seized. Subsequent references to $11,054 having been seized have been based on the PSR.

The complaint and plaintiff's pleadings in this case are unsworn. As mentioned previously, plaintiff's own sentencing testimony accounts for between $7,000 and $8,000 in funds seized from him, not $11,000. In light of the evidence, plaintiff has failed to create a fact issue on the amount of money seized from him when he was arrested. Accordingly, summary judgment should be entered for defendants.

In the alternative, plaintiff's claims will be examined based on the assumption that $11,054 was seized from him at the time he was arrested but only $7,760 was forfeited.

## B. Rule 41(g) Action[2]

As the Fifth Circuit pointed out, under Fed. R. Crim. P. 41(g), the United States can only be required to return the money to plaintiff if the government still possesses it. Bailey, 508 F.3d at 740 (citing Pena v. United States, 157 F.3d 984, 986 (5th Cir. 1998)). As discussed above, included as part of defendants' motion for summary judgment were a copy of the investigation report and the complaint narrative. The documents showed that that currency in the amount of $7,760.00 was seized from plaintiff by Kennemer and that

---

[2]Rule 41(g) provides the following: **Motion to Return Property.** A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

the currency was transferred into a cashiers check and turned over to the United States Marshal's Service for seizure on January 31, 2000, two days after plaintiff's arrest (D.E. 63, Exs. 1, 1A, 1D, pp. 2 and 6 and 1E). King, the government records analyst, stated that if the DEA had possessed more than $7,760.00 it would have appeared in the documents, but it did not. Also, if the DEA still possessed money seized in plaintiff's case she would be aware of the money, but she was not aware of any money (D.E. 63, Ex. 1).

Given the evidence in the record, even if $11,054 were seized from plaintiff by agents when he was arrested, the government has provided evidence that from two days after the arrest until the forfeiture proceeding concluded, the only amount it had in its possession was the $7,760 it admits was seized and forfeited. The affidavit by King is evidence that the government has no other currency seized in plaintiff's case in its possession. Plaintiff has not submitted any evidence to the contrary.

Moreover, even if $11,054 were seized from plaintiff at the time of his arrest but not turned over to the Marshal's Service for forfeiture, the only possible explanations are that the money was stolen by an individual agent, or lost. To address the possibility that the money was stolen, plaintiff has brought a <u>Bivens</u> claim against DEA agent Jeff Kennemer and the action is discussed below. The possibility that the currency was lost is also addressed below in the section discussing the applicability of the Federal Tort Claims Act. But regardless of the outcome of these two claims, plaintiff has failed to show that there is a fact issue regarding whether the United States government ever had more than

$7,760 in its possession. Accordingly, pursuant to the Fifth Circuit's instructions in this case and the holding in Pena, plaintiff is not entitled to relief under Fed. R. Crim. P. 41(g).

## C. Bivens[3] Action

In his amended complaint plaintiff alleged a Bivens action against DEA Agent Jeff Kennemer (D.E. 43, 44). A Bivens action is analogous to an action brought under 42 U.S.C. § 1983--the only difference being that Bivens applies to constitutional violations by federal, rather than state, officials. Evans v. Ball, 168 F.3d 856, 863, n. 10 (5th Cir. 1999). Section 1983 prohibits persons acting under color of law from depriving another of any rights, privileges, or immunities secured by the Constitution and laws. To state a claim under §1983, plaintiff must allege and prove two elements: (1) that he was deprived of a right or interest secured by the Constitution and laws of the United States and (2) that the deprivation occurred under color of state law. West v. Adkins, 487 U.S. 42, 48, 108 S.Ct. 2250, 2254-55, 101 L.Ed.2d 40 (1988). Bivens provides a cause of action only against government officers in their individual capacities. Affiliated Professional Home Health Care Agency v. Shalala, 164 F.3d 282, 286 (5th Cir. 1999).

Defendant Kennemer argues that plaintiff's Bivens action is barred by the statute of limitations. In actions brought under Bivens, federal courts apply the forum state's statute of limitations. Texas Clinical Labs, Inc. v. Leavitt, 535 F.3d 397, 407 (5th Cir.

---

[3] Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

2008).  The applicable Texas statute of limitations is two years.  Id.  Although the state statute governs the timeliness of a Bivens action, the question of when the cause of action accrues is a matter of federal rather than state law.  Longoria v. City of Bay City, Tex., 779 F.2d 1136 (5th Cir. 1986)(citations omitted).  Under the federal standard the cause of action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action.  Id. (citations omitted).

      Plaintiff stated in his objections to the original M&R that he never received actual notice of the forfeiture because he was moved to several jail facilities during the time that the notices of forfeiture were being sent (D.E. 22, p. 2).  He does not explain when or how he came to realize that the government had seized $11,054 but forfeited only $7,760.  However, it appears from the record that plaintiff either knew or should have known about the discrepancy in the amounts seized and forfeited as early as May 31, 2000.  Plaintiff was sentenced on that day and at his sentencing hearing Agent Kennemer testified that $7,760 was seized when plaintiff was arrested (Tr. 11).  Also, plaintiff had a copy of the transcript in his possession at least as early as April 22, 2002 because he refers to it in a memorandum attached to a motion to vacate his sentence that he filed that day (United States v. Bailey, No. 00CR-00024-1, D.E. 70).  Based on this evidence, plaintiff had notice no later than April 22, 2002 that Agent Kennemer was claiming that only $7,760 was seized during the arrest.  Assuming plaintiff knew that he was carrying $11,054 that day, he was on notice that there was a discrepancy in the amount of money confiscated and the amount of money Agent Kennemer was testifying that he had seized.

Even if plaintiff was unaware of the amount of money he was carrying that day, at his sentencing hearing he testified that he had read the presentence report where it was stated that a total of $11,054 was confiscated (Tr. 2). Given the evidence in the record, plaintiff knew no later than April 22, 2002 that some of his money had been seized but not accounted for and his cause of action accrued as of that date. Plaintiff had until April 22, 2004 to file a Bivens action against Kennemer but did not do so until April 6, 2006. His cause of action is barred by the statute of limitations.

## D. Federal Tort Claims Act

To the extent plaintiff wishes to bring a claim under the Federal Tort Claims Act ("FTCA")[4], the cause of action is barred by the holding in Ali v. Federal Bureau of Prisons, ___ U.S. ___, 128 S.Ct. 831, 169 L.Ed.2d 680 (2008), where the Court held that federal law enforcement officers who lose or negligently destroy a claimant's personal property are excepted from the federal government's waiver of sovereign immunity from liability for negligent or wrongful acts of its employees. Moreover, a two-year statute of limitations from the accrual date applies to FTCA claims, 28 U.S.C. § 2401(b), and FTCA time limitations are jurisdictional and can be raised at any time or even *sua sponte* by the court. Johnston v. United States, 85 F.3d 217, 218, n. 2 (5th Cir. 1996). As discussed above, plaintiff knew at least as of April 22, 2002 of the existence of his alleged

---

[4]The FTCA provides that, subject to some exceptions, the United States is liable for certain damages caused by the negligence of any employee of the Government, if a private person would be liable to the claimant under the law of the place where the act or omission occurred. 28 U.S.C. § 1346(b).

13

injury and its causation, because he knew that the government was claiming to have confiscated $7,760 when he believed agents had confiscated $11,054.  He had two years from that date, or until April 22, 2004 to file a lawsuit but did not do so until April 6, 2006.  In addition, plaintiff would be foreclosed from filing an FTCA lawsuit because he did not exhaust his administrative remedies.  28 U.S.C.A. § 2675.

**E.  Equitable Return of Property**

Given the nature of plaintiff's claim, he might also have raised a Fifth Amendment due process claim for the return of his property.  In Polanco v. United States Drug Enforcement Administration, 158 F.3d 647 (2nd Cir. 1998), the court allowed a plaintiff to bring a cause of action for equitable relief when currency was confiscated during the search of a car but never returned to him and there was no evidence of forfeiture in the record.  The court noted that even though the claimant ultimately sought money from the government, his claim was not barred by the doctrine of sovereign immunity because the remedy he was seeking was to correct a procedural deficiency by vacating the administrative forfeiture and requiring the DEA to either return his property to him or begin a new forfeiture proceeding that complied with agency procedure and due process of law.  Id. at 652.  See also Bowen v. Massachusetts, 487 U.S. 879, 893, 108 S.Ct. 2722, 2732, 101 L.Ed.2d 749 (1988)(relief is equitable in nature, even when property at issue is currency).

When a party seeks only equitable relief, the cause of action falls under the Administrative Procedure Act ("APA"), 5 U.S.C. § 702, which waives sovereign

immunity in an action seeking equitable relief from wrongful agency action, except where (i) the action also seeks monetary relief; (ii) there is an adequate remedy at law; or (iii) the action is precluded from judicial review by statute or committed by law to agency discretion.  Id.  The court found that the wrongful agency action was an alleged departure from the DEA's forfeiture procedures and (i) the action did not seek monetary relief; (ii) the claimant had no adequate remedy at law because he could not sue the DEA and (iii) the type of claim against the DEA was neither statutorily precluded from judicial review nor committed to agency discretion by law.  Id.  Accordingly, Polanco was allowed to pursue his case for return of the seized currency.

Plaintiff's case differs from that of Polanco insofar as the claimant in that case had a receipt showing that the currency had been taken from him but there was no evidence of a forfeiture or any other action in the record.  In this case the government has provided evidence that it never had the currency in question.  There is no "wrongful forfeiture" to be challenged because, according to the government's undisputed evidence, it never had the currency in its possession and without the property, could not have moved to forfeit it.  For this reason, plaintiff cannot bring a due process claim regarding the adequacy of the forfeiture proceeding.  Accordingly, it is recommended that any equitable action for return of seized currency plaintiff wished to pursue be dismissed and judgment be entered for defendants.

## RECOMMENDATION

For the reasons stated above, it is recommended that defendants' motion to dismiss, construed as a motion for summary judgment (D.E. 63), be granted and all of plaintiff's claims against the United States and defendant Kennemer be dismissed with prejudice.

Respectfully submitted this 21st day of November, 2008.

_____
B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

## **NOTICE TO PARTIES**

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within **TEN (10) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1)(C) and Article IV, General Order No. 80-5, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within TEN (10) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. Douglass v. United Services Auto Ass'n, 79 F.3d 1415 (5th Cir. 1996)(en banc).